Edmund BURDETTE, Appellant,

v.

William Roger THOMPSON, Appellee.

Court of Appeals of Kentucky.

Nov. 3, 1967.

James F. Clay, Clay & Clay, Danville, for appellant.

Robert M. Spragens, James L. Avritt, Lebanon, for appellee.

C. WARREN EATON, Special Commissioner.

The appellee, William Roger Thompson, a 41-year-old farm worker with a fourth-grade education, was injured while employed by the appellant, Edmund Burdette. The injury occurred when his right hand was caught in the rollers of appellant's corn picker, necessitating the amputation of four fingers. Upon a trial of his claim for damages a jury awarded him $17,000. The only two grounds presented on this appeal by ap-

pellant are (1) there is no liability, and (2) the verdict is excessive. Appellant's contention that there is no liability must depend upon whether there was sufficient evidence to justify submitting the case to the jury.

On the day of the accident appellant was using a one-row corn picker pulled by a tractor. While another employe operated the tractor appellant stood on the picker to prevent the corn stalks and fodder from clogging the machine. After the picker separated the corn it was carried by moving parts and deposited in a wagon to the rear of the picker. Appellee, driving a tractor, would pick up the full wagon, leave an empty wagon in its place, and take the fully loaded wagon to the crib to be emptied. He would repeat the process by returning to the picker to pick up a full wagon and leave the empty one to be filled.

The work continued in this manner until 5:00 p. m. when appellant had to leave to open up another crib, at which point he directed the appellee to stand on the picker and perform the work that appellant had been performing. It was shortly after this that appellee, while engaged in keeping the machine clear of corn stalks and fodder, was injured when a corn stalk caught his sleeve and pulled his hand into the rollers whch ejected the stalks at the rear of the machine.

Appellee had done daywork from time to time for appellant for seven or eight years. The corn picker in question was 10 or 12 years old and had been purchased by appellant second-hand four years prior to the accident. Appellee had never had any experience with it, and had never operated any farm machinery except a tractor.

There was evidence that when the appellee was directed to mount the corn picker the only warnings given him by appellant were not to catch his pants in the chain drive located beneath the cross bar where he stood and to be careful. There was no evidence that the appellant pointed out the rollers or in any manner warned him of this specific danger. Appellee testified that he did not see the rollers at any time while working that day and did not know of their presence. From the pictures filed in evidence it is clear that the rollers were not *so obvious that they would or could have been seen by appellee from the position he occupied while working on the corn picker.* Indeed the appellant himself conceded that the rollers were "difficult to see unless you were looking for them." Certainly it would not have been unreasonable for the jurors to find that they were concealed from the appellee's view and that in fact he did not see them.

The jury was justified also in determining that appellee was employed in a dangerous place, that the machine was not properly operating, and that it was not suited to the work being performed. This is disclosed by following questions and the answers of the appellant:

Q. "Now, actually, the way that corn picker was designed it wasn't supposed to have a stalk, or anything, come back in there?"

A. "If it did, it was supposed to go on out through the rollers."

Q. "But nobody was supposed to be riding back there, is that correct?"

A. "That is right."

Q. "And the machine wasn't operating the way it was designed to be operated that day, was it?"

A. "No, I guess it wasn't."

Q. "And Bill was trying to operate it too fast for its capacity?"

A. "The biggest trouble—it wasn't made for the kind of corn that grows now."

Q. "And you knew that at the time, didn't you?"

A. "That is my opinion."

Q. "You knew it wouldn't do the job right."

A. "I knew it was slow."

The appellant also admitted in his testimony that he knew it was dangerous to ride on the machine in the manner in which the appellee was instructed to ride, and that there was a plate with safety rules attached to the machine warning, among other things, "Keep off implement unless seat or platform is provided." Appellee was unable to read and had no knowledge of the contents of this warning. In fact, appellant admitted that he also was not aware of what was said on the warning plate.

▪ The duties owed by an employer to his employe are set out in Monroe v. Standard Sanitary Mfg Co., 141 Ky. 549, 133 S.W.2d 214, wherein it is stated: "The law imposes upon every one the duty to use reasonable care in the conduct of his business to avoid injuring others. It likewise imposes upon him other duties, such as the duty to provide and maintain for his employes a reasonably safe place in which to work, which, of course, varies with the character and nature of the business; to provide and keep in proper condition tools and appliances reasonably well adapted and suited to the business for which they are to be used; and to instruct his employes in the dangers incident to their employment, and in the use of the tools and appliances with which they are required to work where the business is hazardous or dangerous * * *."

▪ We have examined the record and are convinced that the lower court properly submitted the case to the jury on the issues of appellant's negligence and appellee's contributory negligence and assumption of risk.[1] The evidence was sufficient to justify submitting to the jury the issues of whether appellant had furnished a reasonably safe place for the appellee to work, whether the implement in question was reasonably adapted and suited to its use, and whether the appellant had reasonably instructed the appellee in the use of the implement and sufficiently warned him of the dangers incident to the work.

Appellant relies on the principles stated in Capps v. Pence, Ky., 280 S.W.2d 168; McCormick Harvesting Mach. Co. v. Liter, 23 K.L.R. 2154, 66 S.W. 761; and Louisville & A. R. Co. v. Wilson, 30 K.L.R. 734, 99 S.W. 634, as barring recovery on the theory that when one engages in the service of another with knowledge of the dangers incident thereto, he, not the master, assumes the risk. Appellant contends the danger from the rollers in this instance was visible and obvious to the appellee, and that appellee was bound under the circumstances to have known of the rollers and their danger to him; therefore, under the rulings in the cited cases he was barred from any recovery.

In the *Capps* case the plaintiff was injured when his arms were caught between a roller and belt of a tractor-drawn hay baler which he was operating by himself. The baler was not functioning properly. He got off the tractor to make an adjustment on the baler, but left the power takeoff in gear so that the belts and rollers of the baler continued to run. Had he disconnected the power he would not have been injured. Though he had not previously run the baler by himself, he had operated other types of balers and farm machinery for 12 years and on one or two days before had ridden on the tractor while the baler was being operated by his employer and had observed the latter several times perform the same adjustment he was seeking to make when injured. He did not remember whether in so doing the employer had disconnected the power. In upholding a directed verdict for the employer we said that an employer has no duty to give warning of a danger that is obvious, and that when there is a safe way to do the work but the employe voluntarily chooses an unsafe way he may not recover for an injury resulting from that choice. Significantly, we think, the case was distinguished from a line of deci-

---

1. This case was tried before the doctrine of assumed risk, as distinct from contrib-utory negligence, was abolished in Parker v. Redden, Ky., 421 S.W.2d 586 (1967).

sions affirming verdicts of liability where injured laundry employes had been directed by their superiors to work in close contact with moving rollers. Cf. Ross-Paris Co. v. Brown, 121 Ky. 821, 90 S.W. 568.

In the *McCormick Harvesting Mach. Co.* case the plaintiff was injured when his hand was caught in the snapping rolls of a corn shredding machine into which he was feeding stalks of corn. He was fully aware of the way in which the machine operated and knew that a safety lever, which otherwise might have prevented the accident, had been tied back. The moving parts into which his hand was drawn were directly in front of and plainly visible to him as he worked. When he took the job at an increased rate of pay he assured the foreman that he could feed the machine. He had observed that particular operation and had received instructions on the ground from a representative of the manufacturer. Under these circumstances it was held that he, and not the employer, was responsible for the accident.

In the *Louisville & Atlantic Railroad Company* case a 40-year-old plaintiff's fingers were cut off while he was operating a planing machine. According to the opinion, the evidence disclosed that "several times before he was injured he had worked about this machine, assisting in its operation, and, on one occasion, was the chief operator. It also shows that the knives could plainly be seen by any person using the machine." A protective guard or fender originally attached to the machine had been detached and discarded. After recognizing that "the master is further exempted from liability in respect to dangers which are open, visible, and obvious, to the comprehension of the servant, considering his years, experience, and understanding," and " 'Whatever may be the moral obligation resting upon those who employ people in hazardous work to furnish them the safest possible means to protect them from injury, the law does not forbid a laborer from undertaking a hazardous employment with full knowledge of its dangers, if he wants to,' " this court nevertheless affirmed a verdict and judgment in favor of the injured employe, commenting as follows:

"It is true that the knives were in plain view, and the danger of coming in contact with them was an obvious one; but appellee was not an experienced operator, and did not know that using the machine without guards increased the hazard of his employment or the danger attending the operation of the machine. There is no evidence that he failed to exercise ordinary care for his own safety, and we do not conceive that holding that appellant on the facts presented was not entitled to a peremptory instruction is in conflict with any of the cases cited by counsel, and which have been heretofore mentioned. If this machine had never been equipped with safety appliances, or if such appliances were not in general and common use, *or if appellee had been an experienced operator fully acquainted with the duties of his employment and the risks incident to it,* then the law, as laid down in McCormick Harvesting Machine Co. v. Liter, and kindred cases, would deny appellee the right to recover.

"There is, of course, a marked distinction between cases where an employe of mature years, in the possession of his faculties, suffers injuries by failing to discover patent dangers that are obvious to the simplest understanding, as in using a ladder that is too short for the work intended, * * * or when an employe *who has had experience and full opportunity for examination* is injured by coming in contact with exposed machinery that was in no wise defective, * * * and that class, of which the one before us is a fair illustration, where an operator of no practical experience is put to work with defective machinery." (Emphasis added.) [99 S.W. 634, at 636.]

■ We feel that the appellant is in error in contending that the hazard confronted by the employe in this case was the same open, visible and apparent danger mentioned in the foregoing cases as placing upon the employe the sole responsibility for

his own safety. There was evidence in this case that the appellee did not see the rollers and that they were not plainly visible or discernible by him in his operation of the machine. This fact is further borne out by the photographs, which indicate that the rollers were only visible to a person standing directly behind the machine and who might, in the ordinary course of working behind the machine, have seen them.

The distinguishing feature here is that the evidence justifies a belief that appellee did not know or appreciate the danger, and that it was not so obvious, or such a matter of common knowledge, that a court could say as a matter of law that he must have known it. It may be true that all farm machinery is dangerous, but some machines are more dangerous, and the particular hazards less obvious to the uninitiated, than in the case of others. Certainly we cannot hold that no matter what the machine, or what the particular hazard, any man who works on a farm implement is perforce guilty of failing to exercise ordinary care for his own safety. We feel that this was properly an issue for the jury to determine on the question of appellee's contributory negligence, or his assumption of the risk, both of which were submitted to and determined by the jury.

On the appellant's final contention, that the jury award was excessive and rendered under the influence of passion and prejudice, the novel argument is advanced that there should be some reasonable relation between the right of a farm laborer to recover for injuries and the amount an employe would receive for such injuries under the Workmen's Compensation Act. No supporting authorities are cited and the court sees no basis for the argument advanced by the appellant. The $17,000 verdict consisted of medical expenses of over $3,000, $1,500 for lost earnings during the period of convalescence, and the remaining $12,450.61 for pain, suffering and permanent disability. It is pointed out in appellee's brief that had this been a compensation case there would have been a recovery for the loss of earnings and disability of perhaps $5,000 together with the medical expenses of $3,000 and in addition, the insurer or employer would have been required to pay for the services of the employee's attorney, all of which would have amounted to perhaps 50% or less of the actual award under the verdict. It should be noted that in a tort action of this character other matters of recovery are permitted such as pain and suffering which are not considered under the Workmen's Compensation Law, so that the provisions for recovery under the latter should not be a measure for recovery in a tort action.

We have examined the award from the standpoint of the disability of the appellee and find that he has been practically totally disabled from performing such duties as he has previously performed, has endured extreme pain and suffering, has incurred substantial medical bills and has lost a substantial period of work. We are of the opinion that the award was neither excessive nor rendered under the influence of passion and prejudice.

The judgment is affirmed.

All concur except OSBORNE, J., not sitting.